J-A19036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: NANCY STAPLER-ELIAS, A INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: NANCY STAPLER-ELIAS | : : : : : : | |
| | : | No. 2345 EDA 2019 |

Appeal from the Order Dated July 18, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 2007-X0577

| | | |
|---|---|---|
| ESTATE OF: NANCY STAPLER-ELIAS, AN ALLEGED INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: NANCY STAPLER-ELIAS | : : : : | |
| | : | No. 2346 EDA 2019 |

Appeal from the Order Entered July 15, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 2007-X0577

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED OCTOBER 14, 2020**

In these consolidated appeals,[1] Nancy Stapler-Elias (Appellant) appeals from the July 15, 2019, order entered in Montgomery County Court of Common Pleas, Orphans' Court, ruling on objections she made to the First and Final Account made by Naomi Fenlin (Appellee), the appointed guardian of

---

[1] **See** Superior Court Order, 9/10/19 (*sua sponte* consolidating appeals).

Appellant's estate during a period in which she was totally incapacitated. Appellant also appeals from the trial court's July 18, 2019, order denying her petition for payment of fees and costs. We affirm. The trial court summarized this matter's procedural history as follows:

The First and Final Account of [Appellee, sister and] former Guardian of [Appellant], an Incapacitated Person, was called for audit on August 7, 2017. Objections were filed on July 17, 2017 by [Appellant], a formerly incapacitated person. This court heard evidence with regard to these objections during a two day hearing on June 26, 2018 and June 28, 2018 . . . .

*    *    *

The Account is filed in accordance with this court's Order dated March 28, 2017 which directed the guardian to file an account of her administration. The guardianship terminated following this court's Order dated April 9, 2015 which declared [Appellant] was no longer adjudicated an incapacitated person.

The First and Final Account is stated from March 30, 2007 to April 9, 2015. Therein, [Appellee] reports receipts of $2,584,960.78, since increased by a net gain of $353,986.50[,] since reduced by a net loss of $0 on principal conversions, since reduced by disbursements of $850,141.49, and by distributions for the benefit of [Appellant] or her creditors [of] $0.00, leaving a balance of $2,088,805.39, held as described on pages 8 and 44 of the First and Final Account. No assets remain in the guardian's account as the assets have been returned to [Appellant] following the Court's April 9, 2015 Order.

All parties having or claiming any interest in the Guardianship Estate, of whom the Accountant has notice, are said to have received written notice of the audit, by letter dated June 26, 2017, in conformity with the Rules of Court.

Background

On March 30, 2007, the court determined [Appellant] to be an incapacitated person. Her sister, [Appellee,] was appointed

- 2 -

Plenary Permanent Guardian of [Appellant's] estate and person and posted bond in the amount of $250,000.00.

Prior to her period of incapacity, [Appellant] had obtained an undergraduate degree from Temple University in 1975. She then earned a law degree from Temple Law School in 1978 and became licensed to practice law in Pennsylvania. Her first job after finishing law school was in-house counsel with First Pennsylvania Bank where she worked until 1982. Thereafter she worked in the financial services industry until approximately 2005.

[Appellee] testified that when she began her guardianship, her sister was in a catatonic state. She continued as guardian for her sister until 2015 when [Appellant] returned to being a functioning, talking, thinking, active person again. During this time period, the value of [Appellant's] estate grew.

Following a review hearing, as well as a hearing on [Appellee's] petition to resign and several petitions for counsel fees, on April 9, 2015 the court determined that [Appellant] was no longer incapacitated. Accordingly, the March 30, 2007 order addressing the incapacity and related appointments was vacated.

On February 22, [2017, Appellant] filed a Petition seeking an accounting of [Appellee's] estate administration during [Appellee's] tenure as Guardian of the Estate. The court granted the Petition on March 28, 2017. An accounting was filed with the court on June 27, 2017. Objections to the accounting were filed by [Appellant] on July 17, 2017.

The court conducted a hearing over the course of two days, June 26 and June 28, 2018, to address objections to the accounting. At the start of trial, Counsel for [Appellant] withdrew 18 of the 32 objections. Counsel then categorized the remaining objections into three categories:

(1) Loss of investment income . . . the failure of [Appellee] to hire a financial advisor . . . and failure to report financial assets in principal balance of account . . . ;

(2) Former incapacitated person's personal property items destroyed or lost . . . ;

(3)    [Appellee] imprudently spent estate funds in violation of her fiduciary duty . . . .

[Appellant] maintains that due to [Appellee's] mismanagement, the estate should not pay her counsel fees, nor her court and litigation costs . . . .

Trial Ct. Op., 7/16/19, at 1-3 (citations and footnotes omitted). During Appellee's stewardship, Appellant's estate grew to $2,088,805.29.[2] *Id.* at 2.

At the close of proceedings in the trial court, the court entered the two orders under review, an order of July 15, 2019, disposing of Appellant's objections, and an order of July 18, 2019, denying Appellant's petition for payment of fees and costs. The trial court granted Appellant's objections relating to funds kept in a checking account rather than invested (awarding $2,000 in lost interest), handling of the sale of a used car ($5,000), and disposal of a fur coat ($1,000). *See* Trial Ct. Op. at 6, 8, 10. The trial court also granted an objection as to a $972 late enrollment insurance fee and denied Appellee's petition for payment of fees and costs. *Id.* at 13. Otherwise, the trial court overruled Appellant's objections. The trial court concluded that Appellee, "as guardian of [Appellant's] estate, on the whole managed the formerly incapacitated person's estate with due care." *Id.* at 4. This Court has stated:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court

---

[2] Appellee's initial inventory listed the gross value of the estate as $1,302,746.39. Petition of Guardian for Leave to Resign Guardianship, 12/11/14, at 2 n.1.

- 4 -

in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.

We are not constrained to give the same level of deference to the orphans' court's resulting legal conclusions as we are to its credibility determinations. We will reverse any decree based on palpably wrong or clearly inapplicable rules of law. Moreover, we are not bound by the chancellor's findings of fact if there has been an abuse of discretion, a capricious disregard of evidence, or a lack of evidentiary support on the record. If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Jackson*, 174 A.3d 14, 23–24 (Pa. Super. 2017) (citation omitted).

In her brief, Appellant outlines the questions presented as follows:

1.     Did the Trial Court err by not surcharging [Appellee] who significantly damaged the Estate by failing to follow the explicit direction from the Orphans' Court and develop a plan or implement an investment strategy for more than three years?

2.     Did the Trial Court err by finding that [Appellee] fulfilled her fiduciary duty merely by giving a portion of her ward's assets to a financial institution, when [Appellee] failed to provide adequate information and investment objectives to that institution and then failed to monitor the assets' performance?

3.     Did the Trial Court err by finding that withdrawal of one objection to an accounting, concerning student loans in [Appellant's] name, resulted in the waiver of a different objection, concerning different loans in [Appellant's] daughter's name, which [Appellee] paid without court approval?

4.     Did the Trial Court err by failing to shift the burden of proof to [Appellee], when [Appellee's] breaches of duty were patent, and, as a matter of law, [Appellee] was required to present exculpatory evidence to avoid a surcharge?

5.     Did the Trial Court err in finding that the $30,000 [Appellant] entrusted to [Appellee] for her care shortly before the Guardianship began fell outside the Trial Court's authority?

6.     Did the Trial Court err in failing to award attorneys' fees, litigation costs and interest on the amount surcharged?

Appellant's Brief at 2-3.  Appellant argues that Appellee failed to marshal Appellant's assets, prepare a budget, and diversify investments, and Appellant characterizes these alleged lapses as a violation of fiduciary duty.  Appellant's Brief at 27.  She claims Appellee's conduct violated the Prudent Investor Rule, 20 Pa.C.S. § 7203, which requires that fiduciaries invest and manage trust assets as a prudent investor would, taking into account trust features, goals, and needs, with an investment strategy that reasonably suits the trust.  *Id.* She also reiterates a number of factual claims disposed of by the trial court,

and asks this Court to award counsel fees and costs. *Id.* at 28. She seeks a surcharge for Appellee's alleged failures to implement an investment strategy, and to engage sufficiently with a financial institution managing estate investments. *Id.* at 2. She also argues that the trial court erred in finding waiver of an objection relating to Appellant's daughter's college loans, in failing to shift the burden of proof, in finding that moneys entrusted to Appellee prior to the guardianship fell outside its authority under the estate, and in denying fees and costs. *Id.* at 2-3. In total, she demands $1,176,295.65 plus interest. *Id.* at 60.

Appellee argues that although she took stewardship of her sister's assets during a historical economic crisis, she nevertheless exercised common prudence, skill, and caution as required by *In re Lentz' Estate*, 72 A.2d. 276 (Pa. 1950). Appellee's Brief at 18, *citing In re Lentz' Estate*, 72 A.2d at 278. She asks that this Court not disturb the trial court's well-reasoned disposition. *Id.* at 41-42.

A fiduciary must "take custody of the estate and . . . administer it so as to preserve and protect the property for distribution to the proper persons within a reasonable time . . . [and] will be required to exercise the same degree of judgment, skill, care, and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs." *Matter of Estate of Campbell*, 692 A.2d 1098, 1101–02 (Pa. Super. 1997) (citations omitted). Surcharges may be imposed to compensate beneficiaries for losses incurred where a fiduciary deviates from the standard of ordinary

care, but not for mere errors in judgment. *In re Miller's Estate*, 26 A.2d 320, 321 (Pa. 1942). Therefore, a breach of duty that does not cause a loss should not occasion a surcharge. *In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010).

We analyze Appellant's several claims of error *seriatim*.

## 1. Assets Uninvested During Recession

Appellant claims that the trial court erred in concluding that Appellee's "action in wanting to preserve estate assets by leaving them 'as is' [was] reasonable." Appellant's Brief at 34, *citing* Trial Ct. Op. at 6. Approximately $900,000 was kept in a checking account from November of 2009 to May of 2010, after which the funds were managed by Morgan Stanley. Trial Ct. Op. at 5.

The trial court credited Appellee's testimony that she was concerned about the economy and wanted to "do what [she] thought was safe" during that period. Trial Ct. Op. at 5. Experts for both parties testified that the market was markedly bearish at the time. *Id.* Given the limited time during which this money was left uninvested and the volatility of the market, we cannot find an abuse of discretion here.

Similarly, approximately $102,000 was kept in a checking account for three and a half years. Trial Ct. Op. at 6. This was an operating account, and the trial court granted Appellant's objection and awarded $2,000, finding that a certificate of deposit would have been an appropriate way to handle the funds. *Id.* Nevertheless, Appellant argues that this is insufficient. We

- 8 -

disagree. Because it was an operating account, any reasonable investment strategy would have been unlikely to yield significant income because that is not the primary purpose of an operating account. Appellant was severely ill during this period, and her medical needs and expenses could have escalated at any point. We cannot in hindsight say that she should have known this would not happen. There is no abuse of discretion here.

Appellant also faults Appellee's handling of Appellant's own investments in her 401(k) account, pension plan, and Bank of America stock. Appellant's Brief at 17. Appellant claims that the trial court did not take into account that she had been ill for two years before the guardianship was created, "so that the assets as initially received no longer represented a carefully considered composition of assets by a financially capable person[.]" *Id.* at 34. However, Appellant does not cite any allegedly unsound decisions Appellant herself made during those two years. The trial court was in the best position to gauge how the financial crisis impacted the early period of Appellee's financial stewardship, and we can find no abuse of discretion in its conclusions here.

## 2. Morgan Stanley Investments

Appellant argues that Appellee's employment of Morgan Stanley to handle the $900,000 was also inappropriate, and its handling of that money and her IRA damaged the estate "in an amount ranging from $224,097 to $493,826." Appellant's Brief at 18. Appellant claims that Appellee selected inappropriate investment goals and failed to monitor Morgan Stanley's handling of the assets. *Id.* The gravamen of her complaint seems to be that

Appellee told Morgan Stanley that income should be a primary objective, but ultimately, during the guardianship, Appellant's income exceeded her expenses and thus she did not need income. *Id.* at 37 ("What [Appellant] **did** need (and still needs now) was principal growth to provide a nest egg[.]"). Although the assets placed with Morgan Stanley appreciated in value, Appellant believes they should have appreciated at a greater rate. *Id.* at 40.

This argument strikes the Court as a classic case of hindsight. Investing is always risky and imprecise, and Appellant's medical situation similarly held the potential for serious volatility. Thus, income-generation was not an unreasonable or imprudent goal. The trial court did not abuse its discretion in denying Appellant's objections as to these investments.

**3. College Loans – Waiver**

Appellant claims that the trial court erred in finding that Appellant's withdrawal of an objection waived another objection pertaining to bonds that Appellee cashed in to pay off student loans in Appellant's daughter's name. Appellant withdrew an objection pertaining to loans for her daughter's education that were taken in Appellant's own name, as it appears they will be discharged. Appellant's Brief at 41; Trial Ct. Op. at 6-7. Appellant seeks $43,008 plus interest for three bonds that Appellee used to pay Appellant's daughter's college loans. Appellant's Brief at 42. The bonds were co-owned by Appellant's daughter, as they had been issued in both Appellant's name and her daughter's name. Appellee's Brief at 30.

The trial court was in the best position, as factfinder, to weigh whether Appellant's withdrawal of objections waived this claim. Appellant's brief does not establish an abuse of discretion sufficient to set aside the trial court's finding.

## 4. Burden-Shifting

Appellant claims the trial court erred in failing to shift the burden of proof to Appellee. Appellant argues that she has established significant discrepancy and patent error. *In re Maurice's Estate*, 249 A.2d 334 (Pa. 1969), establishes that "those who seek to surcharge a fiduciary for breach of trust must bear the burden of proving the particulars of his wrongful conduct." *Id.* at 336. However, where a "glaring error in overpayment of tax [was] shown, it was the burden of the Executor to come forward with evidence to prove that . . . it used common skill, prudence and due care under the circumstances." *Id.* Appellant claims she has established "numerous, glaring, facially-apparent breaches of fiduciary duty" and therefore the trial court erred in failing to shift the burden to Appellee to defend her performance. Appellant's Brief at 43.

Appellant's complaints in this regard fall in two categories: personal property, and medical insurance. Appellant's Brief at 44-53. Appellant claims

that "instead of safeguarding [Appellant's] belongings, she destroyed them."[3] *Id.* at 44. She claims losses of $191,627.14. *Id.* at 47.

The trial court surcharged Appellee $5,000 for a Honda vehicle that was sold because Appellant's daughter did not want it; had she not sold it, it would have lay fallow as it inevitably depreciated in value. Appellee admitted that she did not account for the $5,000 properly, and says she learned to be more detailed because of the error. Trial Ct. Op. at 8. The trial court also imposed a surcharge of $1,000 for a fur coat that Appellee discarded. *Id.* at 10.

Based on its credibility determinations and testimony that significant amounts of the personal property Appellant claims are gone are actually in her daughter's possession, and on the paucity of evidence Appellant presented, the trial court denied the remaining objections as to personal property. Trial Ct. Op. at 9-10. The trial court's findings, which are inevitably heavily influenced by the credibility and consistency of testimony at trial, do not appear to this Court to be an abuse of discretion. We have no doubt that, if Appellee had preserved Appellant's apartment in an "as is" condition, paying rent for an uninhabited home while also paying for Appellant's residence in a care facility, Appellant would find that to be a deviation from the standard of prudent care to which fiduciaries must be held. Contrary to Appellant's somewhat hyperbolic assertions that "everything she had earned [has been]

---

[3] Appellant claims that she "is like the victim of a flood with everything that she had earned, been gifted, collected and treasured, forever washed away." Appellant's Brief at 44.

forever washed away," *see* Appellant's Brief at 44, it appears that the more apparently high-value property was kept for her, whereas larger, less valuable pieces of property were either given to Appellant's daughter or discarded. **See** Trial Ct. Op. at 9-10. We will not disturb the trial court's findings.

Appellant argues that Appellee's failure to enroll Appellant in Medicare Part D and payment for insurance through Blue Cross (which she characterizes as "unnecessarily duplicative"), combined with other insurance decisions, cost the estate $53,291 plus interest. Appellant's Brief at 51, 53. The trial court noted its disapproval of Appellee's failure to purchase Medicare supplemental insurance for Appellant from November 2010 to April 2015. Trial Ct. Op. at 12. The trial court also imposed a surcharge of $972 for a late enrollment fee the estate sustained. *Id.* at 13. However, Appellant did not provide credible evidence as to supposed losses due to prescription drug coverage. *Id.*

Again, because the trial court was in the best position as factfinder to weigh these considerations, we apply the abuse of discretion standard; although Appellant claims "[Appellee's] breaches of such basic obligations shock the conscience[,]"we disagree. **See** Appellant's Brief at 53. Appellee's handling of certain aspects of Appellant's insurance regime was less than ideal, but it is readily apparent that, for the most part, she sought reliable insurance and good care for Appellant. Medical insurance is complex, and we will not reach behind the trial court's able handling of the facts here.

## 5. Pre-Guardianship Funds

Appellant's claim as to the $30,000 that passed from Appellant to Appellee prior to the creation of the estate, a claim which is unsupported by any legal authority, fails for the reason the trial court identified: Appellant herself acknowledged that prior to her loss of capacity, she gave the money to Appellee. *See* Trial Ct. Op. at 7. Thus, it falls outside the Estate and is not part of its accounting, nor the court system's supervision thereof. Appellee correctly points out that "[t]o hold otherwise would expand the accounting period to an indefinite and indefinable term." Appellee's Brief at 36. This claim fails.

## 6. Fees, Costs, and Interest

Appellant faults the trial court for denying her request for $166,293.51 for counsels' fees and costs. Appellant's Brief at 55-60. She also seeks interest on the surcharges imposed by the trial court. *Id.* at 60.

Appellant cites *In re Kline's Estate*, 124 A. 280 (Pa. 1924), which held that "[t]he audit was necessary because of the fault of the trustee: hence the latter and not the estate must bear the cost thereof." *See id.* at 283. Appellant also cites a Common Pleas opinion for the proposition that "the orphans' court, as a court of equity, has always had the power to surcharge a party for counsel fees when it is apparent that the conduct of a party has been the cause of additional legal expenses." Appellant's Brief at 57, *citing In re Rosenfeld Found. Tr.*, Phila. O.C. 1664 IV 2002, 2006 WL 3040020, at *40 (Pa. Com. Pl. July 31, 2006) (citation omitted). In that case, "it was the

obdurate refusal of the [trustees] to perform their duties . . . that necessitated the prolonged litigation." ***Id.***

The trial court denied fees and costs to both parties. Trial Ct. Op. at 13; Order, 7/18/19 (denying Appellant's petition for counsel fees and costs). Appellee points out that, despite Appellant's several objections, the trial court ultimately awarded Appellant an amount constituting less than one percent of what she sought. Appellee's Brief at 40-41. Given this award, and given the apparent sweeping scope of Appellant's objections and her appellate litigation strategy, we cannot upset the trial court's inherent recognition that it was not Appellee who "necessitated the prolonged litigation" as in ***Rosenfeld***. ***See Rosenfeld***, 2006 WL 3040020 at *40.

Finally, Appellant argues that the trial court erred in failing to award interest. "A personal representative who has committed a breach of duty with respect to estate assets shall, in the discretion of the court, be liable for interest, not exceeding the legal rate on such assets."[4] 20 Pa.C.S. § 3544. This standard affords discretion to the trial court. Appellant's argument is that because Appellee committed "blatant and repeated breaches of her fiduciary duties over eight years" while acting as guardian, she should be surcharged interest. Appellant's Brief at 60. However, Appellant has not established an abuse of discretion, and as such this argument fails.

---

[4] This section is applicable to incapacitated persons' estates *via* 20 Pa.C.S. § 5533.

- 15 -

The trial court's opinion, dated July 15, 2019 and docketed the following day, thoroughly and ably disposes of Appellant's claims. Therefore, we affirm on the basis of its reasoning. **See** Trial Ct. Op. at 1-14. The filing party shall attach a copy of the trial court's opinion to any future filing of the instant memorandum.

Orders affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2020

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

NO. 2007-X0577

\* \* \* \*· \* \*

ESTATE OF NANCY STAPLER ELIAS,
A FORMERLY INCAPACITATED PERSON

\* \* \* \* \* \*

The First and Final Account of Naomi Fenlin, former Guardian of Nancy Stapler Elias, an Incapacitated Person, was called for audit on August 7, 2017. Objections were filed on July 17, 2017 by Nancy Stapler-Elias, a formerly incapacitated person. This court heard evidence with regard to these objections during a two day hearing on June 26, 2018 and June 28, 2018. This matter is ripe for adjudication.

<u>COUNSEL APPEARED AS FOLLOWS</u>:

GALBRAITH LAW, LLC
By: Michael L. Galbraith, Esquire
For the Accountant,

DOLCHIN, SLOTKIN & TODD, P.C.
By: Barry Krengel, Esquire
For Nancy Stapler Elias.

The Account is filed in accordance with this court's Order dated March 28, 2017 which directed the guardian to file an account of her administration. The guardianship terminated following this court's Order dated April 9, 2015 which declared Nancy Stapler Elias was no longer adjudicated an incapacitated person.

The First and Final Account is stated from March 30, 2007 to April 9, 2015. Therein, the Accountant reports receipts of $2,584,960.78, since increased by a net gain of $353,986.50 since reduced by a net loss of $0 on principal conversions, since reduced by disbursements of

THIS DOCUMENT WAS DOCKETED AND SENT ON 07/16/2019

$850,141.49, and by distributions for the benefit of the ward or her creditors $0.00, leaving a balance of $2,088,805.29, held as described on pages 8 and 44 of the First and Final Account. No assets remain in the guardian's account as the assets have been returned to Ms. Stapler-Elias following the Court's April 9, 2015 Order.

All parties having or claiming any interest in the Guardianship Estate, of whom the Accountant has notice, are said to have received written notice of the audit, by letter dated June 26, 2017, in conformity with the Rules of Court.

Background

On March 30, 2007, the court determined Nancy Stapler-Elias ("Petitioner") to be an incapacitated person. Her sister, Naomi Fenlin ("Respondent") was appointed Plenary Permanent Guardian of Nancy's estate and person and posted bond in the amount of $250,000.00.

Prior to her period of incapacity, Petitioner had obtained an undergraduate degree from Temple University in 1975. She then earned a law degree from Temple Law School in 1978 and became licensed to practice law in Pennsylvania. Her first job after finishing law school was in-house counsel with First Pennsylvania Bank where she worked until 1982. Thereafter she worked in the financial services industry until approximately 2005. NT, 6/26/18, pgs. 142-144.

Respondent testified that when she began her guardianship, her sister was in a catatonic state. She continued as guardian for her sister until 2015 when Petitioner returned to being a functioning, talking, thinking, active person again. NT, 6/26/18, pgs. 125-126. During this time period, the value of Petitioner's estate grew.

Following a review hearing, as well as a hearing on the guardian's petition to resign and several petitions for counsel fees, on April 9, 2015 the court determined that Petitioner was no

2

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

longer incapacitated. Accordingly, the March 30, 2007 order addressing the incapacity and related appointments was vacated.

On February 22, 1017, Petitioner filed a Petition seeking an accounting of Respondent's estate administration during Respondent's tenure as Guardian of the Estate. The court granted the Petition on March 28, 2017. An accounting was filed with the court on June 27, 2017. Objections to the accounting were filed by Petitioner on July 17, 2017.

The court conducted a hearing over the course of two days, June 26 and June 28, 2018, to address objections to the accounting. At the start of trial, Counsel for Petitioner withdrew 18 of the 32 objections.[1] Counsel then categorized the remaining objections into three categories:

(1) Loss of investment income (Objections 9, 12, 14), the failure of Naomi to hire a financial advisor (Objection 5) and failure to report financial assets in principal balance of account (Objection 7);

(2) Former incapacitated person's personal property items destroyed or lost (Objections 1, 2, 3, 4,)[2];

(3) Guardian imprudently spent estate funds in violation of her fiduciary duty (Objections 16, 18, 21, 22).

Objections 29-31 relate to the Petition for Adjudication. Petitioner maintains that due to the guardian's mismanagement, the estate should not pay her counsel fees, nor her court and litigation costs (Objection 31). Objection 30 alleged that the guardian improperly handled her daughter's student loan for college (Objection 30), but this objection was later withdrawn during the course of the hearing. N.T. 6/28/18 pg. 4. This court determined the remaining Objection,

---

[1] The following objections were withdrawn: Nos. 6-8, 10, 11, 13, 15, 17, 19, 20, 21, 23 – 28. NT 6/26/18, pp. 4-5, 117; NT 6/28/18, p.4-5.

[2] Objection 1 states: "Objection to Principal Receipts on page 3 of the Accounting, to the extent that the schedule does not reflect assets that should be included in the Estate." This Objection is **DISMISSED** as overly general in nature. Petitioner's objections 2, 3 and 4 detail more specific items and are addressed *infra*.

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

#29, to be overbroad and lacking specific details. Accordingly, it is therefore summarily dismissed.

In the performance of her fiduciary duties, the fiduciary must exercise the "judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs." *In re Estate of Campbell*, 692 A.2d 1098, 1101-02 (Pa. Super. 1997). A surcharge is the penalty imposed by the court for the failure of a fiduciary to meet his duty of care owed his estate. As noted in *Miller's Estate*, 26 A.2d 320, 321 (1942), "Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." *Estate of Stephenson*, 364 A.2d 1301, 1306 (Pa. 1976).

A surcharge will not be imposed for mere errors of judgment. It is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care. *In re Miller's Estate,* 26 A.2d 320, (Pa. 1942).

However, even if there is a breach of duty, where there is no loss, there is no basis for a surcharge. *In re Estate of Warden,* 2 A.3d 565, 573 (Pa. Super. 2010).

A guardian of an incapacitated person's estate shall administer the estate subject to the prudent investor rule. 20 Pa. C.S. §§ 5521(b); 5145; 7201, *et seq.*

After review of all credible evidence, this court concludes that Respondent, as guardian of Petitioner's estate, on the whole managed the formerly incapacitated person's estate with due care. However, there were instances during the period of her administration where this court determined a surcharge was necessary. The court's findings follow.

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1) <u>LOSS OF INCOME</u>

<u>Financial Advisor</u>

At the March 30, 2007 hearing where Judge Ott determined the incapacity of Petitioner, the Respondent under oath admitted that she lacked the capacity to manage Petitioner's assets but noted her intent to hire a financial advisor to assist her fund management. (EXH P-1, N.T. 3/30/07, pg. 20) While Respondent testified at trial, "I was stepping into this role totally blind" (N.T. 6/26/18, pg. 47), she also had sufficient notice of her duty "to place idle assets into productive form" and she had numerous opportunities to implement this duty. N.T. 6/26/18, pgs. 10-11 and N.T. 6/28/18, pg. 37.

Petitioner attributes Respondent's failure to hire a financial advisor as the cause for several estate account deficits. Specifically, at trial Petitioner notes the foregone interest on funds in two separate checking accounts: (1) $900,000 in Susquehanna Bank from November 5, 2009 through May 20, 2010 and (2) $102,000 in Citizens Bank from October 2011 through April 2015. Petitioner also claims the Estate 401(k) account and shares of Bank of America stock all declined in value due to the absence of a financial planner.

After discussions during April 2010, Respondent hired financial advisor, Morgan Stanley firm, on May 21, 2010 – three years after her appointment. N.T. 6/26/18, pgs. 8-9, 73. Respondent was reluctant to make financial decisions during a period of financial upheaval: "I wanted to do what I thought was safe … reasonable, and … would safeguard her money." N.T. 6/26/18, pgs. 12, 90. Expert witness for both parties credibly testified that "the market tanked in 2008 and 2009." N.T. 6/28/18, pgs. 33-34, 116-119.

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Given the unstable condition of the financial market, particularly at the beginning of the Respondent's administration period, this court concludes that Respondent's action in wanting to preserve estate assets by leaving them "as is" is reasonable. Upon retaining a financial advisor, the accounts were reallocated in a timely manner and Petitioner's assets grew. Therefore, the request that Respondent reimburse the estate for unrealized interest income for the 401(k) account, Bank of America stock shares and the Susquehanna Bank checking account is **DENIED** and Objections #5 and #9 are **OVERRULED**.

### Citizens Bank Checking Account

All parties described the Citizens Bank account as an "operating account." However, Respondent failed to create a budget, which would have guided her fiscal management of estate operational funds. N.T. 6/26/18, pg. 18. As a result, the operating account maintained a balance of approximately $102,000 for 3.5 years. If Respondent had created a budget so that she was aware of estate expenses, the account balance — considering Respondent's trepidation about the failing financial market — could have conservatively been placed into a bank-sponsored, federally- insured certificate of deposit where it would have earned at least a total of $2,000 during the 3.5 year time period. Accordingly, Objection #12 is **SUSTAINED** and Respondent is **SURCHARGED** $2,000.

### Savings Bonds

Petitioner maintains that she gave Respondent U.S. savings bonds that Respondent failed to include in her accounting (Objection #14). At trial, Petitioner alleged that she gave Respondent six U.S. savings bonds worth $10,000 each. The objection faults Respondent for using the proceeds from three of the bonds (redeemed value: $31,752) to pay outstanding student

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

loans of Petitioner's daughter, as well as Respondent's failure to note the transaction in her accounting. NT, 6/26/18, pgs. 119-120. On the second day of trial, counsel for Petitioner advised the court that claims related to the student loans would not be pursued. N.T. 6/28/18 pg. 4. The court finds that the allegations in Objection #14 related to the student loan debt are similar to the objections waived on Objection #30. Accordingly, the request to surcharge Respondent for the value of savings bonds used to pay for student loans is **OVERRULED**.

### Pre-Guardianship Transfer of Funds

Objection #14 also faults Respondent's failure to include in the accounting $30,000 that Petitioner gave Respondent prior to her illness. Although Respondent was unable to specifically recall at trial when this transaction occurred (N.T. 6/26/18, pgs. 93-95), Petitioner testified that she gave Respondent $30,000 "for my needs ..." prior to her hospitalization in September 2006. Because Respondent's duties as guardian did not exist until the Guardianship was created on 3/30/07, this transaction falls outside the court's authority over the accounting. The request for surcharge to replace $30,000 is **DENIED.**

Objection 7, which is an objection to the principal balance on hand for failure to include Discover Bank CD Account and Countrywide CD Account, is **DISMISSED** for failure to present evidence in support of the claim..

### 2) PERSONAL PROPERTY

Objection #4 states that the $5,000 proceeds from the sale of the estate vehicle ("Honda") were not included in the accounting.

Judge Ott, in his July 2, 2007 letter (R-2), authorized Respondent to "gift" the Honda to Petitioner's daughter, reasoning that Petitioner could no longer use the Honda due to her

incapacity. However, Petitioner's daughter did not want the Honda. As a result, Respondent sold the car to a family friend for $5,000. ("proceeds")

Because Respondent does not recall where she deposited the proceeds, she included the funds in the accounting category of "Miscellaneous Unknown Deposits." This accounting category was created to reflect the surplus of unaccounted-for estate funds. Specifically, Respondent noted at trial that the proceeds are included in the accounting as part of a deposit that occurred on December 19, 2007. However, no evidence was introduced substantiating this assertion.

Respondent admittedly incorrectly listed the Honda in the accounting as a gift to Petitioner's daughter. N.T. 6/26/18, pg. 66. In fact, the Honda value is listed as zero in the accounting. The parties stipulated that the proceeds are not listed as a separate asset in the accounting. In her defense, Respondent contends she didn't know what was required at the time and claims that she learned to be more detailed as a result of her error.

The court finds that Respondent's explanation regarding the proceeds lacks credibility. Respondent's role as a business owner is inconsistent with the absent documentation and the erroneous characterization of the car transfer as a gift. Respondent's handling of the Honda transaction is a breach of her fiduciary duty. Accordingly, Objection #4 is **SUSTAINED** and Respondent is **SURCHARGED** $5,000.

Petitioner asserts in Objection #2 that "certificates of deposit, stock certificates, bonds and fine jewelry" stored "in a safe deposit box and/or a locked cabinet" were not included among the Principal Receipts of the Accounting. Under oath, Petitioner stated that she had a safe deposit box at the former Fidelity Bank in Dresher, PA but does not recall the last time she accessed the safe deposit box. Petitioner failed to produce corroborating evidence regarding the

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

existence of her safe deposit box and its contents, testifying that her search efforts to locate documentation regarding the existence of the box were unsuccessful. N.T. 6/26/18 pg. 169. Due to a lack of corroborating evidence regarding the existence of Petitioner's safe deposit box and its contents, all objections (#2) related to the alleged contents of the safe deposit box are **OVERRULED**.

Respondent's negligent bookkeeping is reflected in her custodial management of estate personal property and her failure to create an inventory of personal property. Objection #3 claims that Respondent failed to include in the accounting the value of numerous pieces of jewelry, flatware, collectible art and fur coats, ostensibly valued at approximately $236,000. However, Petitioner failed to meet her burden of proof to credibly document the existence and value of personal property items formerly owned by the estate.

Petitioner introduced Exhibit 20 containing a list of jewelry for which receipts were in the locked file cabinet but the jewelry was allegedly not returned to her. The listing fails to present corroborating evidence which this court needs to make a sound decision regarding the alleged missing jewelry. There were no receipts or pictures of any of these items and no credible independent testimony of a non-interested party to establish the existence and/or value of any of these items. Furthermore, Petitioner's credibility was impugned by the conflicting evidence she presented at trial. For example, Petitioner admitted giving Respondent "some of my more valuable jewelry but not certainly all of it." N.T. 6/26/18 pg. 146. She also claimed that all of her jewelry was in a locked cabinet: "I kept all of my jewelry in the top drawer of my locked file cabinet. So, yes, I believe all the jewelry would have been there." N.T. 6/26/18 pg. 173. This court also received credible evidence that Petitioner's daughter possessed some of her jewelry. N.T. 6/26/18 pg. 171 and 6/28/18 pg. 159.

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Respondent however, credibly testified that there was no jewelry in the locked cabinet when she reviewed the locker contents after it was forcibly opened. More believable is Respondent's statement that Petitioner gave her a canvas bag of jewelry for safekeeping prior to the start of guardianship proceedings, and therefore not technically included in the Principle Receipts section of the Accounting. N.T. 6/26/18, pg. 49.

For similar reasons, the court cannot make a conclusive determination on the issue of missing furniture and accessories due to Petitioner's failure to present corroborating evidence in support of her claim as to the existence of such items and their value. Petitioner is unsure of what her daughter took possession of, other than items observed during a visit to her daughter's California residence. N.T., 6/26/18, pg. 171. No contradictory evidence was presented to show that Petitioner's daughter was not the last person to possess Petitioner's furniture.

Petitioner's Exhibit 20 lists a fur coat, initially purchased for $8,150. Respondent credibly testified regarding her logic for discarding Petitioner's fur coat, given the small resale value of fur coats and the cost of appropriate storage for an unknown length of time. N.T., 6/26/18, pg. 62-63. However, Respondent made no effort to preserve the value of that asset in some format, such as selling the coat on eBay or Craig's List. Accordingly, Respondent is **SURCHARGED** $1,000.00 for the fur coat. All other objections listed in Objection #3 are **OVERRULED** for failure to present any credible evidence corroborating their existence or value.

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## 3) FIDUCIARY DUTY

### Medical Care Insurance Payments

Objections #16 and #18 fault Respondent for using estate funds to pay for medical care that was already covered by Medicare.

Petitioner became eligible for Medicare in April 2008. Objection #18 contests the $1,085.84 COBRA payment that Respondent made in April 2008. Respondent credibly testified that this payment covered medical care for back coverage. N.T. 6/26/18, pg. 116-117. No contradictory evidence was received. Therefore, Petitioner's request to surcharge Respondent $1,085.84 is **DENIED**. Objection 18 is **OVERRULED**.

Objection #16 contests payments made to Blue Cross Health Insurance after Petitioner became eligible for Medicare in April 2008. Respondent justifies this purchase as supplemental insurance for Medicare and maintains it was a continuation of the health insurance Petitioner had through her employer (via COBRA). N.T. 6/26/18, pg.113. Respondent paid approximately $28,000 in premiums and was reimbursed 18,000, which was reflected in the accounting. Respondent's payment of approximately $10,000 over the time period between April 2008 and November 2010 results in a reasonable monthly payment of approximately $300. Respondent further noted that she received multiple notices from Blue Cross that they were going to drop Petitioner's PPO coverage and switch her to a health savings account. Respondent credibly testified that she thought this would make her administration of the estate more difficult without any added benefit for Petitioner so she decided to drop this coverage. NT, 6/26/18, pgs. 113-116. Petitioner's request that Respondent be surcharged for the purchase of Medicare supplemental insurance from April 2008 to November 2010 is **DENIED**. Objection 16 is **OVERRULED**.

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

At trial, Petitioner's expert witness raised the question of whether Petitioner needed Blue Cross health insurance as a supplemental policy, noting the inconsistency of adequate medical insurance coverage throughout the guardianship period. This court shared this observation. Respondent's testimony indicated Petitioner had no Medicare supplemental coverage from November 2010 until the guardianship was terminated in April 2015. The court agrees that Medicare supplemental insurance, be it Medicare Advantage or Blue Cross health insurance, is a basic necessity, especially when an individual can afford it. Both parties testified similarly regarding the need for Medicare supplemental insurance. N.T. 6/26/18, pgs. 113 and 161. The court deeply disapproves of Respondent's failure to provide Medicare supplemental insurance coverage from November 2010 to January 2015.

Prescription Drug Payments

Objection #22 charges that, because Respondent applied for Medicare Part D (to cover payment of medications) during the latter stage of her guardianship, Respondent unnecessarily paid $69,238.56 for drugs that Medicare Part D would have covered. Due to Respondent's untimely enrollment, the estate incurred a $972 late enrollment fee.

Petitioner's Exhibit P-27 reflects an alleged loss of $22,538 for the estate. Petitioner's calculation encompasses the time period of November 2010 through March 2015. At trial, Petitioner testified that her Medicare Part D and Medicare Advantage began in January 2015. Petitioner failed to provide credible evidence reflecting the difference between the amount Respondent paid for drugs and the amount the drugs would have cost under Medicare Part D. Furthermore, Respondent credibly testified that the costs for medication were high because Petitioner was not compliant with taking her prescribed pills. She had been hiding them in her cheeks and then hiding them around her room. Doctors later prescribed the liquid form of

medication but Petitioner was still noncompliant resulting in the use of expensive medical patches not covered by insurance. NT, 6/26/18, pgs. 117-118. Therefore, Petitioner's request to surcharge Respondent $22,538 for failing to apply for Medicare Part D is **DENIED**.

Due to Respondent's untimely Medicare application, Petitioner's request that Respondent incur as a surcharge the $972 late enrollment fee is **GRANTED**. Accordingly, Objection 22 is **SUSTAINED in part** and **OVERRULED in part.**

### Payment of Accountant's Counsel Fees, Court & Litigation Costs

In paragraph (c) of the Rider to the Petition for Adjudication, the Accountant/Respondent requests this court to approve the payment of her counsel fees, costs and filing fees associated with the filing of this Account. Petitioner filed an objection to this request which is identified as Objection 31 in the document filed July 17, 2017. Due to Respondent's negligence in managing Petitioner's estate and her failure to continuously uphold her fiduciary duty, the Petition of Accountant for Payment of Attorney's Fees and Estate Litigation Costs is **DENIED**. Objection #31 is **SUSTAINED**.[3]

There are no remaining questions before this Court requiring adjudication.

Subject to the views expressed in this Adjudication, to distributions heretofore properly made, and to any Pennsylvania inheritance transfer tax that may properly be due, the net ascertained balances of principal and income are awarded as set forth in the last paragraph of the Petition for Adjudication.

AND NOW, this 5th day of July, 2019, the First and Final Account is confirmed subject to the findings of the Court herein, and it is hereby **ORDERED** and **DECREED** that the Guardian reimburse the estate for surcharges herein awarded.

---

[3] Counsel fees stated in the First and Final Account are confirmed.

13

A motion for reconsideration of this adjudication may be filed within twenty (20) days from the entry of the Adjudication. An appeal from this adjudication may be taken to the appropriate appellate court within thirty (30) days from the entry of the adjudication. *See*, Pa. O.C. Rule 8.2 and Montgomery County Local Rule 8.2A, and Pa.R.A.P. 902 and 903.

BY THE COURT:

CHERYL L. AUSTIN, J.

Copy of the above *E-filed/E-mailed 7/15/19*
July  *15* , 2019, to:
Michael L. Galbraith, Esquire
Barry Krengel, Esquire

Case# 2007-X0577-46.3.1.7 Received at Montgomery County Register of Wills Office on 07/15/2019 3:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

14